IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY AND YVONNE MARTINEZ,

        Plaintiffs,

  v.

WACHOVIA MORTGAGE, FSB, WORLD SAVINGS BANK, INC., WORLD SAVINGS BANK FSB and DOES 1 through 10, inclusive,

        Defendants.

2:09-cv-02787-GEB-CMK

ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER ISSUING A PRELIMINARY INJUNCTION

Plaintiffs move for a preliminary injunction ("motion") in which they seek to prevent Defendants from conducting a "trustee's sale on [their] home," "now scheduled for March 15, 2010." (Not of Mot. 1). "Defendant Wachovia Mortgage ("Wachovia"), a division of Wells Fargo Bank, N.A., formerly known as Wachovia Mortgage FSB, which was formerly known as World Savings Bank, FSB," represents all Defendants in this case and opposes the motion. Wachovia extended the date for the trustee sale to March 15, 2010, to provide Plaintiffs with time to file the motion. (Mot. 9:1-2). The motion was heard on March 8, 2010. For the reasons stated below, Plaintiffs' motion is **DENIED**.

### I. BACKGROUND

At oral argument on the motion, Plaintiffs clarified that the only basis on which they seek to prevent Defendants from conducting a trustee's sale on their home is the rescission claim in

1

their complaint, alleged under the Truth In Lending Act ("TILA"). Plaintiffs argue they are entitled to rescind their loan because "[t]he Truth and Lending Disclosure [("TILD")] provided indicated a payment of $2306.57 at 7.2% interest," which would be applied to both principal and interest," yet Plaintiffs' initial $2,306.57 monthly payment "figure is actually based on an interest of 2.75% which is not "true or accurate" since "a payment at the rate of 7.2% . . . would [have been a] larger figure." (Yvonne Martinez Decl. ¶¶ 4,5 Ex. 2 to Mot; Mot. 7:10-14.)

Plaintiffs argue because of this failure to disclose that Plaintiffs' initial $2,306.57 monthly payment "figure is actually based on an interest of 2.75% rather than "a payment at the rate of 7.2%, they are entitled to a three year period within which to rescind the loan under 15 U.S.C. § 1635(a) and (f). (Mot. 14:14-24). Plaintiffs assert that Exhibit 3 attached to their motion is their rescission letter dated April 21, 2009, which they sent to Wachovia. (Id. 15:19-27, Yvonne Martinez Decl. ¶ 6, Martinez Ex. 3). Plaintiffs argue because of the April 21 rescission letter, Wachovia's security interest in Plaintiff's residence became null and void and therefore the trustee's sale cannot proceed. (Id.)

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting and citing

Winter v. Natural Resources Defense Council, 129 S.Ct. 365, 374 (2008)).

Plaintiffs request that judicial notice be taken of four "articles concerning the World Savings Pick a Payment Loan," which show the various options available under the payment plans. (Request for Judicial Notice 1-2). Plaintiffs argue "the first option, most commonly selected by borrowers under this scheme, involves paying less than the interest being accumulated, typically 125 percent of the initial loan balance[,]" which "'recast[s]' [the loan] to reflect full amortization of the loan for its remaining term" and "causes a huge increase in the required monthly payments . . . ." (Mot. 8:11-21).

Defendants object to this judicial notice request, arguing that the request does not seek to have "the [C]ourt take notice of any particular 'adjudicative facts,' so the request should be denied on that ground alone." (Defs.' Obj. 1:26-28). Defendants also argue that in the first article, the "CBS News Article[,]" "the fact . . . that there is a sharp increase in residential foreclosures in California" does "not have any bearing on this particular lawsuit," and "[e]verything else in the article is either irrelevant or else neither a generally known fact nor one that would be capable of determination by resort to any source whose accuracy could not be reasonably questioned." (Id. 2:2-8). Further, Wachovia objects to judicial notice being taken of the "Mandrigues lawsuit," discussed in the second and third articles, and of the "Paul Bishop" lawsuit, discussed in fourth article, arguing these lawsuits have been "hotly" and "vigorously contested" and "nothing has been proven one way or another." (Id. 2:9-20).

3

1		Wachovia also requests that judicial notice be taken of two printouts from the California Department of Real Estate's website showing that both Plaintiffs are licensed California real estate brokers. Plaintiffs did not object to this request.

Facts properly subject to judicial notice are those that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Plaintiffs' request that judicial notice be taken of the four articles is denied since the articles are not from "sources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201. Wachovia's request that judicial notice be taken of the website print outs concerning each Plaintiffs' real estate broker licenses is granted. The information in these printouts is not disputed and is "capable of determination" since it is from the California Department of Real Estate website, a "source[] whose accuracy cannot reasonably be questioned." New Mexico ex rel. Richardson v. BLM, 565 F.3d 683, 702 n. 22 (10th Cir. 2009)(taking judicial notice of data on web sites of government agencies).

### III. ANALYSIS

**A. Likelihood of Success on the Merits**

**1. TILA**

Plaintiffs argue their TILA loan rescission claim has merit since "Defendants failed to disclose in a clearly understandable manner the interest rate upon which Plaintiff[s]' monthly payments were based." (Mot. 13:20-23.) Plaintiffs argue under

4

12 C.F.R. § 226.17 "disclosures mu[st] be presented in a way that does not obscure the relationship of the terms to each other." (Id. 13:23-24.) Plaintiffs also argue Defendants violated TILA by failing "to disclose that the payment cap associated with the loan was guaranteed to cause negative amortization if Plaintiff[s] complied with the payment schedule provided by Defendants," citing 12 C.F.R. § 226.19 and 12 C.F.R. § 226.17 as support for this proposition. (Id. 13:25-27). Plaintiffs also contend "Defendant[s] materially and significantly misrepresented the loan costs finance charges and [annual percentage rate ("APR")] to Plaintiff[s]." (Id. 14:25-27.)

The TILD Plaintiffs attach to their motion as Exhibit 1 shows a payment schedule beginning on January 15, 2008, with a monthly payment of $2306.57 for each month in 2008, the amount of which increases thereafter each year. (Martinez Ex. 1). Plaintiffs argue Defendants failed to show the negative amortization feature of the loan, since the TILD does not "disclose the correct amounts of payments of the life of the loan [to satisfy the 7.2% interest rate disclosed in the Note] and . . . [the TILD does not] reveal the negative amortization if the least payment is constantly made." (Id. 7:22-24; Yvonne Martinez Decl. ¶ 4, Martinez Ex. 1).

Plaintiffs also attach the Note dated November 14, 2007 to their motion as Exhibit 2. The Note states in section 2 "this Note begins and it continues until December 15, 2010[.] During this Modification Period, I will pay interest at the fixed yearly rate of 7,200%[.]" (Martinez Ex. 2.) Section 4(B) of the Note shows that Plaintiffs selected the amount of $2,306.57 as their initial monthly payments, and were informed this amount "may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal

5

balance." (Id.) Plaintiffs contend the language in the Note stating "[e]ach of my initial monthly payments . . . in the amount of $2306.57," which "was selected by me from a range of initial payment amounts approved by Lender *and [which] may not be sufficient to pay the entire amount of interest* accruing on the unpaid Principal balance," was deficient to warn them that the loan would in fact negatively amortize as a result of the monthly payment Plaintiffs' selected. (Id. 8:4-7)(emphasis in Plaintiffs' Mot.) Plaintiffs argue "an emphatic 'will not' [was necessary to] be sufficient to be truthful." (Id. 8:8-10.) Plaintiffs assert because of these deficiencies in the TILD and the Note, they "were led to believe that the loan was fully amortizing at the stated rate and payment amount, [and] that their payments would reduce the balance of the loan and increase their equity." (Id. 7:14-16.) Plaintiff Yvonne Martinez declares she signed the Note "with the understanding that the payments would be applied to both principal and interest." (Yvonne Martinez Decl. ¶ 5.) Plaintiffs argue that instead "the payment amount stated was a negative amortization payment for the first ten years and was based on the completely undisclosed rate." (Mot. 7:17-19). Plaintiffs contend, consequently, the "non[-]disclosed rate has resulted in a $54,000 increase in total indebtedness on the loan." (Id. 8:22-23.)

Wachovia counters that "the documents attached to the Declaration of its attorney Christopher A. Carr ("Carr Decl.") [as Exhibits] show that Wachovia informed [P]laintiffs precisely what sort of loan they were getting." (Opp'n 2:20-21.) Wachovia argues that the Note, which Wachovia submitted as Exhibit 1, "shows in Article 2 on Page 1 that the interest rate for the first three years was 7.2%." (Id. 2:22-23, Wachovia Ex. 1.) Further, Wachovia argues Plaintiffs

6

have conflated the payment rate with the interest rate and asserts that "[t]he payment rate, as contrasted with the interest rate, is set forth in Article 4(B) on Page 2" of Exhibit 1 as $2,306.57. (Id. 2:24-25, Wachovia Ex. 1).

Wachovia also argues Plaintiffs' contention the language in the Note that loan payments "may not be sufficient to pay the entire amount of interest accruing" is inapposite since the "Deferred Interest Acknowledgment," attached as Exhibit 5 to Wachovia's Opposition, "which was signed by both [P]laintiffs [on November 14, 2007,] eliminates any purported doubt as to what would definitely happen if the minimum payment was chosen in any particular month." (Id. 3:5-8; Wachovia Ex. 5.) Wachovia argues that the top of the "Deferred Interest Acknowledgment," which contains information on payment options, including the minimum payment option, advises Plaintiffs "in bold type . . . about the consequences of making a minimum payment." (Id. 3:6-7.) Wachovia asserts that "in the paragraph numbered '(3)'. . . the following language appears [:] 'Minimum Payment This is the smallest amount you are allowed to pay. If you choose this option and the payment is lower than then interest due, you *will* incur deferred interest which will be added to the principal balance of your loan." (Id. 3:9-13) (emphasis added by Wachovia). Wachovia contends Plaintiffs "were further advised of the advantages and disadvantages of the respective choices for a payment" since "the last sentence on that page clearly advises that it would be beneficial to pay more than the minimum payment;" and "on the second page, at the end of the first paragraph, [P]laintiffs were again told they could avoid any negative amortization by making a payment higher than the minimum payment." (Id. 3:14-16).

7

Plaintiffs stopped making their $2306.57 monthly mortgage payments, and foreclosure proceedings were instituted.

> 15 U.S.C. § 1635[(a)] governs the borrower's right under TILA to rescind a 'consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended.' **Under this section, the borrower has a right to rescind 'until** midnight of the third business day following the consummation of the transaction or **the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later.' Until the lender makes all required 'material disclosures,' therefore, the three-day time rescission period does not begin to run. . . . Even where the lender has not provided the disclosures necessary to trigger the three-day rescission period, however, [under 15 U.S.C. § 1635(f)] the right to rescind 'expire[s] <u>three years</u> after the date of consummation of the transaction or upon the sale of the property, whichever occurs first.'**

Demarest v. Quick Loan Funding, Inc., No. CV09-01687 MMM (SSx), 2009 WL 940377 at *4 (C.D.Cal. 2009)(internal citations omitted)(emphasis added). The essence of Plaintiffs' argument is that TILA required Defendants to disclose the interest rate applicable to Plaintiffs' initially selected monthly mortgage payment, since it was less than the disclosed interest rate; and that the failure to make this disclosure prevented Plaintiffs from knowing the monthly payment they selected was insufficient to pay their loan interest and part of the principal. Plaintiffs' argument reveals the disclosure to which they contend they were entitled concerns the risk of negative amortization.

> **[C]ases analyzing § 226.23(a)(3)'s materiality provisions universally hold that a plaintiff is not "entitled to rescind his loan transaction due to defendants' alleged failure to disclose the risk of negative amortization."** See Chetal v. American Home Mortg., No. C-09-02727-CRB, 2009 WL 2612312 (N.D.Cal. Aug. 24, 2009) ("Plaintiff has not demonstrated that the loan papers failed to disclose the loan's negative amortization potential

8

> [ . . . ] Plaintiff cites to no cases in which similar disclosures have been found inadequate."); Jordan v. Paul Fin., LLC, --- F.Supp.2d ----, 2009 WL 1941561 (N.D.Cal.2009) ("Plaintiff is not entitled to rescind his loan transaction due to defendants' alleged failure to disclose the risk of negative amortization."); [Mandrigues, 2009 WL 160213] ("[E]ven if Plaintiffs were to succeed in showing that Defendants failed to provide adequate disclosures of negative amortization, it appears that this failure would not trigger a right of rescission."); see also McCutcheon v. America's Servicing Co., 560 F.3d 143, 150, n. 6 (3rd Cir. 2009) (same).

Reagan v. Aurora Loan Services, Inc, No. 1:09-CV-00839-OWW-DLB, 2009 WL 3789997 at *8 (E.D. Cal. Nov. 10, 2009).

> ***Courts have explained that when a loan contains a variable rate feature, TILA mandates two sets of disclosures:*** those set forth in 12 C.F.R. § 226.19(b)(1)-(2), which require disclosures with respect to negative amortization, and those set forth in 226.18(f)(2), which require two statements prior to consummation of the loan transaction: (1) "that the transaction contains a variable-rate feature;" and (2) "that variable-rate disclosures have been provided earlier." . . . ***Only the second set of disclosures are considered 'material disclosures' which, if not provided before consummation of the transaction, will trigger the extended rescission period. Failure to provide the first set of variable-rate disclosures, while still a violation of the statute, 'may subject [the lender] to other sanctions, but it will not extend the rescission period granted to the consumer.'***

Mandrigues, 2009 WL 160213 at *5 (emphasis added). Plaintiffs have not alleged they did not receive the second set of material disclosures under 12 C.F.R. § 226.18(f)(2).

Lastly, Plaintiffs make the conclusory argument that "Defendant[s] materially and significantly misrepresented the loan costs finance charges and [annual percentage rate ("APR")] to Plaintiff[s]." (Mot. 14:25-27.) The TILD, however, shows 7.322% is the Annual Percentage Rate, $1,003,937.36 is the Finance Charge, $557,938.35 is the amount Financed, and $1,561,875.71 is the Total of

Payments ("The amount you will have paid after you have made all payments as scheduled."). (Martinez Ex. 1.) In light of these disclosures, Plaintiffs have not shown their conclusory argument concerning loan costs finance charges and annual percentage rate constitutes a viable claim.

Accordingly, Plaintiffs have not shown they are likely to succeed on the merits of their TILA rescission claim.

**B. Irreparable Harm**

Plaintiffs argue they "will suffer irreparable harm if Defendants are permitted to persist with their efforts to sell Plaintiff[s'] property at the scheduled trustee's sale" because they would lose their home and their right to rescission once the house is sold. (Mot. 11:7-28). Christopher Carr of Wachovia declares that "Wachovia has not received a mortgage payment for well over a year," and as of . . . February 18, the arrearage[] [is] in the amount of $39,013.67, with monthly payments presently at $2,306.59, per the loan . . . ." (Carr Decl. ¶ 3, Ex. 6).

"Clearly, loss of a home is a serious injury. However, the record suggests that [Plaintiffs] sought a loan beyond [their] financial means . . . . Such resulting harm does not alone entitle [them] to injunctive relief." Alcaraz v. Wachovia Mortgage FSB, 592 F.Supp.2d 1296, 1301-02 (E.D. Cal. 2009).

**C. Balance of Equities and Public Interest**

Plaintiffs also argue that the balance of equities tips in their favor. They contend a preliminary injunction "will do nothing more than preserve [the] status quo [of Plaintiff[s] controlling [their] home, while Defendants possess a security interest in it[,]" yet if "Defendants sell the property at a the [t]rustee's sale,"

Plaintiffs "will lose title to their home, causing them significant and irreparable damage" and "Defendants' position would be virtually unchanged." (Mot. 12:10-16).

Plaintiffs have failed to show that the balance of equities tips in their favor. Plaintiffs are behind on their loan payments and have not shown they can satisfy their sizeable debt. Nor have they shown they have a likelihood of success on the merits of their claim. Under the circumstances, the balance of equities does not tip in their favor.

Lastly, Plaintiffs have not shown that a preliminary injunction would serve the public interest. Unlike other cases, where "[t]he public interest is served by affording homeowners the opportunity to pursue *facially valid* claims before their home is sold," here Plaintiffs have not shown that their TILA rescission claim is valid. Zinni v. M & I Marshall, No. CV-09-2035-PHX-FJM, 2010 WL 537723 at *2 (D.Ariz. February 12, 2010)(emphasis added).

### IV. CONCLUSION

For the stated reasons Plaintiffs have failed to satisfy the requirements for a preliminary injunction. Therefore, Plaintiffs' motion is **DENIED**.

Dated: March 10, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge

11